IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>*Plaintiff,*<br><br>v.<br><br>**WILLIAM R. BAUER**<br>*Defendant.* | Case No. 3:19-CR-490<br><br>Judge Jack Zouhary<br><br>Magistrate Judge James R. Knepp II |
| **OHIO CENTER FOR INVESTIGATIVE JOURNALISM AND SANDUSKY REGISTER'S MOTION TO INTERVENE AND UNSEAL THE GOVERNMENT'S MOTION TO REVOKE BOND** | |

      Movants Ohio Center for Investigative Journalism and the Sandusky Register respectfully seek leave to intervene in this case for the limited purpose of asserting the public's First Amendment and common-law rights of access to judicial records, including the government's Motion to Revoke Bond (Doc. #36) and related attachments.

      Dr. Bauer, through counsel, objects to this motion. Movants have sought to obtain consent to intervene from the government, or to negotiate the release of the motion with appropriate redactions, but they have not received a response to any of their messages.

      This motion is supported by the attached memorandum.

**MEMORANDUM IN SUPPORT**

**Issues presented**

1. When a court considers limiting access to materials and proceedings presumptively open to the public, media organizations may intervene to contest those closures. The Ohio Center for Investigative Journalism and the Sandusky Register wish to report on this case, and on the sealed Motion to Revoke Bond in particular. Should the Court allow them to intervene to vindicate the public's rights of access?

2. Court records and proceedings are generally open to the public, unless a court makes case-specific findings demonstrating the necessity of closure. The government filed its Motion to Revoke Bond under seal without providing any factual basis to support a complete prohibition on public access, and without the Court's acceptance of that factual showing. Must the Court return the motion to the public docket?

**Facts and procedural background**

The prosecution of Defendant William Bauer is the subject of national media coverage, both locally and nationally. After securing an indictment, the U.S. Attorney's Office actively stoked media interest in the case, blasting out a press release that trumpeted its 200-count complaint alleging that Dr. Bauer has been overprescribing prescription painkillers and explicitly placed this case into the broader public debate over the national opioid-abuse epidemic.[1]

Outlets from Portland, Ore.,[2] to Washington, D.C.,[3] picked up the story, and since then, Movants and other local media have continued to monitor the government's efforts to prosecute a doctor who insists he has been acting in his patients' best interests.[4]

---

[1] *Port Clinton physician indicted for prescribing thousands of doses of powerful painkillers, such as fentanyl and oxycodone, without regard to medical necessity*, U.S. Department of Justice (Aug. 21, 2019), https://www.justice.gov/usao-ndoh/pr/port-clinton-physician-indicted-prescribing-thousands-doses-powerful-painkillers-such ("'Physicians take an oath to do no harm, but Dr. Bauer pursued greed over his oath,' said FBI Special Agent in Charge Eric B. Smith. 'The FBI will continue efforts to root out physicians that are contributing to the daily addiction epidemic we face and hold them accountable.'") (attached as Ex. 1).

[2] *Doctor who says he's patient advocate charged in pill probe*, Associated Press (Aug. 21, 2019), https://theanswerportland.com/news/health/doctor-who-says-hes-patient-advocate-charged-in-pill-probe (attached as Ex. 2).

[3] *Doctor who says he's patient advocate charged in pill probe*, Associated Press (Aug. 21, 2019), https://www.washingtontimes.com/news/2019/aug/21/doctor-who-says-hes-patient-advocate-charged-in-pi/ (attached as Ex. 3).

[4] *See, e.g.*, Kaitlin Durbin, *55 new counts filed against doctor accused of over-prescribing pain meds*, Toledo Blade (Oct. 9, 2019), https://www.toledoblade.com/local/courts/2019/10/09/william-bauer-port-clinton-doctor-accused-

The Court held a status conference on December 16, 2019, where it advised Dr. Bauer of the danger of speaking publicly about his case without consulting counsel but made clear that it was "not going to abridge his rights to speak."[5] Also during that meeting, the Court advised the parties that they "may" submit under seal any filings that contain "patient names, dates of birth, social security numbers, and other personal identifiers."[6]

Now, for reasons that the public cannot discern—but apparently related to Facebook activity and phone calls—the government on January 16 filed a sealed motion to revoke Dr. Bauer's bond.[7] Having exploited its opportunity to broadcast its theory of the case to its potential jury pool, the government seeks this relief on the basis of a secret motion. In filing the motion under seal, it blocked the public and the press from understanding how this case is unfolding, what conduct the government considers a basis for revoking bond, and what speech in the Facebook posts attached to its motion as Exhibits 1 and 2 could support revocation.

The government filed today a redacted version of its motion. Doc. #48. Movants can only guess at the content of the redacted material—much of it appears to be the names and phone numbers of potential witnesses in the case—or the government's basis for making those redactions. Further, the government's filing appears to have included only two of the nine attachments to the sealed motion, leaving phone records, transcripts, and other documents completely under seal.

---

of-over-prescribing-pain-meds-indictment/stories/20191009106 (attached as Ex. 4); Michael Harrington, *U.S. Attorney motions to revoke Dr. Bauer's bond, Sandusky Register* (Jan. 21, 2020), https://sanduskyregister.com/news/23566/us-attorney-motions-to-revoke-dr-bauers-bond/ (attached as Ex. 5); Michael Bratton, *Patient defends doctor facing federal charges for over-prescribing pain meds*, WTVG (Aug. 21, 2019), https://www.13abc.com/content/news/Patient-defends-doctor-facing-federal-charges-for-over-prescribing-pain-meds-557813071.html (attached as Ex. 6).

[5] Tr. 14:24–15:15.

[6] Doc. 28 at 2.

[7] Doc. #36.

But Movants, along with the rest of the press and the general public, have a right—guaranteed by binding Sixth Circuit precedents—to follow this case, to observe its proceedings, and to access its docket. That right cannot be limited until after the parties make specific factual showings, after the Court provides an opportunity for the public to be heard, and after the Court makes specific findings justifying a decision to keep its records secret.

Access to the Motion to Revoke Bond and to subsequent filings in the case is vital to Movants' ability to continue covering the development of this case and help the public understand what to make of the government's allegations that a well-regarded doctor in their community has been exploiting his patients to facilitate a fraud against the federal government. Based on the information presently available to the public, they cannot.

Movants therefore seek leave to intervene and be heard to assert the public's right of access to the Motion to Revoke Bond and subsequent filings in this case.

**Law & argument**

I. **The Movants have a right to intervene and be heard.**

For its right of access to be meaningful, the public must be heard before that right is infringed. "The importance of the rights involved and interests served by those rights require that the public and press be given an opportunity to respond before being denied their presumptive right of access to judicial records." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 475 (6th Cir. 1983). The proper procedural vehicle for such a response is a motion to intervene. "[M]edia organizations may move to intervene for the purpose of contesting closure of hearings and the sealing of documents." *Application of Storer Commc'ns, Inc.*, 828 F.2d 330, 335 (6th Cir. 1987).[8]

---

[8] *See also In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d at 476 (courts should "afford interested members of the public an opportunity to intervene and present their views to the court."); *In re Consumers Power Co. Sec. Litig.*, 109 F.R.D. 45, 47 (E.D. Mich. 1985) ("*In re Knoxville* recognized a special, limited purpose intervention to provide the press and/or public a reasonable opportunity to state objections to a protective order or other obstacle to access to certain information involved in a litigation."); *U.S. ex rel. Martin v. Life Care Centers of Am.*,

The Ohio Center for Investigative Journalism and the Sandusky Register are members of the press with an interest in reporting on the prosecution of Dr. Bauer. But as representatives of the public, were unable to assert their interest in access to the case because the government submitted its filing under seal with no notice to the public. Nor could the Court's order permitting the parties to file under seal "patient names, dates of birth, social security numbers, and other personal identifiers"[9] have given press or the public fair notice that such filings would be sealed *in their entirety*.

Because the Movants had no notice of the government's plans to file its motion under seal, the Court should grant their Motion to Intervene to assert their right of access to the Motion to Revoke Bond and subsequent filings in the case.

## II.     The government's sealing of its Motion to Revoke Bond violates the common law right of access.

### A.     The common-law right of access attaches to the Motion to Revoke Bond.

"A presumption of openness inheres in the very nature of a criminal trial under this Nation's system of justice."[10] "The courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."[11] "The interest necessary to support the issuance of a writ compelling access has been found, for example … in a newspaper publisher's intention to publish information concerning the operation of government."[12]

While some limited exceptions have been carved out for "privacy rights of participants or third parties, trade secrets and national security,"[13] the general rule of common law is that *when a filing "is the basis for [an] adjudication, only the most compelling reasons can justify the*

---

*Inc.*, 912 F. Supp. 2d 618, 622 (E.D. Tenn. 2012) (granting limited motion to intervene to challenge restrictions on access).
[9] Order, Doc. #29.
[10] *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 556 (1980).
[11] *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).
[12] *Id.* at 597–98.
[13] *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983).

*total foreclosure of public and professional scrutiny."* *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1180 (quoting *Joy v. North*, 692 F.2d 880 (2d Cir. 1982)).[14]

Allowing access to any record that is "the basis for [an] adjudication,"[15] naturally results in broad access, as parties rarely submit anything to the Court except as the basis for some adjudication. Virtually all orders are entered to either grant or deny relief requested in some sort of motion, and so all those motions come under the umbrella of the common-law right of access. Relying on that right, the media and the public may access all manner of pre-trial documents, including search warrants,[16] exhibits from the trial itself,[17] and case-terminating records like plea agreements.[18]

It should be no surprise, then, that courts reject the sealing of motions related to bond revocations, as well. In *United States v. Carr*, No. 11 CR 112, 2012 WL 3262821 (N.D. Ill. Aug. 9, 2012), for example, the government sought to revoke the defendant's bond because of a suicide attempt. The defendant's opposition was filed under seal, but the court said that treatment was

---

[14] *See also Garden City Employees' Ret. Sys. Cent. States Kern v. Psychiatric Sols., Inc.*, No. 3:09-CV-00882, 2016 WL 5231805, at *5 (M.D. Tenn. Sept. 20, 2016) ("Since [the document] is the basis for the adjudication, only the most compelling reasons can justify the total foreclosure of public and professional scrutiny."); *Foster v. Am. Fire & Cas. Co.*, No. 5:13-CV-426-GFVT-REW, 2016 WL 10409304, at *1 (E.D. Ky. Feb. 4, 2016) ("If a document 'is the basis for the adjudication, only the most compelling reasons can justify the total foreclosure of public and professional scrutiny.'"); *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, No. 2:04-CV-1069, 2007 WL 1796089, at *3 (S.D. Ohio June 21, 2007) ("[A] strong public right of access attaches when a document is filed or utilized in public proceedings.").

[15] *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1180 (quoting *Joy*, 692 F.2d 880). *See also Garden City Employees' Ret. Sys. Cent. States Kern v. Psychiatric Sols., Inc.*, No. 3:09-CV-00882, 2016 WL 5231805, at *5 (M.D. Tenn. Sept. 20, 2016) ("Since [the document] is the basis for the adjudication, only the most compelling reasons can justify the total foreclosure of public and professional scrutiny."); *Foster*, 2016 WL 10409304, at *1 ("If a document 'is the basis for the adjudication, only the most compelling reasons can justify the total foreclosure of public and professional scrutiny.'"); *Wedgewood Ltd. Partnership I*, 2007 WL 1796089, at *3 ("[A] strong public right of access attaches when a document is filed or utilized in public proceedings.").

[16] *In re Search of Fair Fin.*, 692 F.3d 424, 433 (6th Cir. 2012) ("[T]he common law right of access to judicial documents may in some situations permit access to search warrant proceedings.").

[17] *Beckham*, 789 F.2d at 415 ("[T]he common-law right was curtailed" by order denying access to copies of tapes played at trial.).

[18] *United States v. DeJournett*, 817 F.3d 479, 485 (6th Cir. 2016) (order sealing plea agreement "fail[ed] to satisfy the less-burdensome standard for abridging the common law right of public access to judicial records").

inappropriate: "Litigation is to be conducted in public unless there is some compelling reason not to; there is none here. Closed proceedings breed suspicion of prejudice and arbitrariness, which in turn spawns disrespect for law."[19]

Because the Motion to Revoke Bond will be the basis for the Court's adjudication on bond, the Court should find that common-law right of access attaches, and that it is presumptively open to the public.

### B. The government did not satisfy the requirements to seal the record despite the common-law right of access

The common-law right of access is not absolute, as a court may close proceedings or seal records "if, in the exercise of the court's sound discretion, it determines that non-disclosure is warranted."[20] But that discretion is not limitless. The court exercising it must do so with an emphasis on "the relevant facts and circumstances of the particular case,"[21] and the court must make factual findings specific to the case explaining why disclosure should not be allowed.[22]

Because the analysis begins with the presumption of openness, the question is not whether there is a basis to unseal the government's motion, but whether there was a basis to seal it in the first place.[23] This is high bar to clear, as very little happens in a criminal proceeding without the common-law right of access attaching. Here, the government's unilateral filing under seal—followed by a refiling of a redacted, partial version of its motion—stripped the Court of its opportunity to make those findings. The Court was therefore unable to make the factual findings—specific to that

---

[19] *Carr*, 2012 WL 3262821, at *6.

[20] *DeJournett*, 817 F.3d at 485.

[21] *Id.* at 485 (quoting *Nixon*, 435 U.S. at 599).

[22] *Id.* at 485 ("Having failed to identify the relevant facts and circumstances justifying non-disclosure in this particular case, the district court's decision still falls short under the common law framework.").

[23] *United States v. Beckham*, 789 F.2d 401, 420 (6th Cir. 1986) ("Given the strong common law presumption in favor of public access to judicial records, the burden of rebutting or overcoming the presumption falls on the party opposing access.").

motion—explaining why nondisclosure was warranted. Given those failings, the motion was improperly filed under seal.

Because the common-law right of access attaches and the government has offered no justification for sealing the Motion to Revoke Bond or its attachments, the Court should order them unsealed until the government makes the required showing.

**III.   The government's sealing of its Motion to Revoke Bond violates the common law right of access.**

**A.   The First Amendment right of access attaches to the Motion to Revoke Bond.**

Even if the common-law did not require access to the Motion to Revoke Bond and its attachments, Movants would be entitled to it under the First Amendment, where their right of access is even stronger. That right attaches when access to a record is supported by the "experience and logic" test.[24] Under this test, a court asks whether there is a tradition of openness surrounding the kind of records in question,[25] and whether access to such records leads to structural benefits, such as promoting public confidence in the courts, encouraging reliable factfinding, or restraining parties' abuse of the judicial system.[26]

*The Sixth Circuit has already recognized that the First Amendment right of access extends to bond-related motions and hearings.* In *Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002), an immigration judge ordered the closure of a bond hearing for an immigrant suspected of funding terrorist organizations, and several newspapers sought transcripts of the hearing, as well

---

[24] *In re Search of Fair Finance*, 692 F.3d at 429 ("If a proceeding passes this 'experience and logic' test, a qualified right of access attaches to it.").

[25] *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 605 (1982) ("[A] tradition of accessibility implies the favorable judgment of experience.").

[26] *See, e.g., Press-Enter. Co. v. Superior Court of California, Riverside Cty.*, 464 U.S. 501, 508 (1984) ("The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.").

an order requiring that future hearings be held in public. The district court concluded that the bond proceedings were subject to the First Amendment right of access, and the Sixth Circuit affirmed, noting that (1) the hearings in question "historically have been open," satisfying the experience test;[27] and (2) opening the bond hearings would promote accountability for the government, encourage fair hearings, and provide a "cathartic effect" for the public.[28] The court concluded with sweeping language endorsing liberal interpretations of the public's right of access: "Today, we reflect our commitment to those democratic values by ensuring that our government is held accountable to the people and that First Amendment rights are not impermissibly compromised. Open proceedings, with a vigorous and scrutinizing press, serve to ensure the durability of our democracy."[29]

The fact that the bond-revocation motion in this case comes outside the immigration context has no bearing on the impropriety of its sealing. As explained in the discussion of the common-law tradition above, pretrial procedures in American have historically been held in the open, satisfying the experience prong of the *Richmond Newspapers* test.

This includes, for instance, first appearances,[30] arraignments,[31] calendar calls,[32] preliminary hearings,[33] suppression hearings,[34] plea agreements,[35] plea hearings,[36] guilty pleas,[37] judicial

---

[27] *Detroit Free Press*, 303 F.3d at 701.

[28] *Id.* at 703–04.

[29] *Id.* at 711.

[30] *Fuqua v. Pridgen*, No. 1:12-CV-93(WLS), 2013 WL 12212365, at *8 (M.D. Ga. Feb. 20, 2013).

[31] *Id.* at *8.

[32] *Id.* at *8.

[33] *Press-Enter. Co. v. Superior Court of California for Riverside Cty.*, 478 U.S. 1, 10 (1986) ("[T]he right of access applies to preliminary hearings.").

[34] *In re Search of Fair Finance*, 692 F.3d at 429.

[35] *DeJournett*, 817 F.3d at 485 ("[T]he public has a constitutional right to access plea agreements.").

[36] *In re Search of Fair Finance*, 692 F.3d at 429.

[37] *Fuqua*, 2013 WL 12212365, at *8.

disqualification petitions,[38] and *voir dire* hearings,[39] all of which are within the First Amendment right of access in criminal cases. Bond revocations are no different, as motions are routinely filed on the public docket and hearings are typically held in open, or at least on the record, with transcripts available to anyone who requests them.

The logic prong is easily satisfied, as well. No different from a plea deal or a trial exhibit, a bond-revocation motion should be open to the public to advance the ideals that animate the First Amendment right of access. When the public can see that the Court takes such a motion seriously and properly weighs the competing interests, it has greater confidence that the justice system is working as it should. Holding the proceeding in public encourages more reliable factfinding because the factual predicate for the motion is held up to greater scrutiny, requiring greater diligence from the parties arguing either side and subjecting any witnesses to the kind of public scrutiny that encourages full honesty. And—especially assuming the defendant did something to warrant a bond revocation—allowing the public to monitor the proceedings provides the same "community therapeutic value" when the public sees that the justice system is taking prompt action to prevent any further harm.[40]

Particularly important in this case is the value of access in restraining abuses of power. Given Dr. Bauer's history of speaking publicly about his case and criticizing the government for what he perceives as a faulty understanding of the practice of pain management—a concern with at least enough merit to raise concern among local media[41]—there are legitimate concerns that the attempt

---

[38] *Application of Nat'l Broad. Co., Inc.*, 828 F.2d 340, 345 (6th Cir. 1987) ("[T]here is a qualified right of access to documents and records that pertain to a proceeding in which one or more parties seek to disqualify a judge").

[39] *Press-Enterprise Co.*, 464 U.S. 501 ("The guarantees of open public proceedings in criminal trials cover proceedings for the *voir dire* examination of potential jurors.").

[40] *Richmond Newspapers, Inc.*, 448 U.S. at 556.

[41] Matt Westerhold, *Piling on Dr. Bauer?*, Sandusky Register (Oct. 17, 2019) https://sanduskyregister.com/news/25693/piling-on-dr-bauer/ ("[W]e asked the U.S. attorney's office basic questions about the government's investigation but were denied any information about how it was conducted, what experts were consulted or how it was determined that Dr. Bauer was improperly prescribing medications. … The new

to revoke Dr. Bauer's bond may be tainted by a retaliatory animus. The press, as a representative of the public, just yesterday reiterated this concern.[42]

The portions of the motion released on the public docket vindicate these concerns, as the government explicitly relies on First Amendment–protected activity as a basis for revoking bond:

- The government objects that one of Dr. Bauer's patients is trying to arrange a meeting with other people interested in Dr. Bauer's case. Doc. #48 at 3. "The right of the people peaceably to assemble" is protected by the First Amendment.

- The government made a point of including that one Facebook user wrote, "its pissed me off the way they have done this good man." Doc. #48 at 3. Criticizing the government is protected by the First Amendment.

- The government complains that Dr. Bauer maintains a website that "instructs visitors how to … file an Americans with Disabilities Act claim '[i]f you are suffering and have been denied your prescription.'" Doc. #48 at 4. The right "to petition the Government for a redress of grievances" is protected by the First Amendment.

- The government complains that Dr. Bauer maintains a website that "instructs visitors how to … sign a petition at change.org to 'end the baseless restrictions on prescriptions for chronic pain management.'" Doc. #48 at 4. The right "to petition the Government for a redress of grievances" is protected by the First Amendment.

- The government complains that Dr. Bauer maintains a website that "instructs visitors how to … '[c]onnect with other patients and advocates.'" Doc. #48 at 4. "The right of the people peaceably to assemble" is protected by the First Amendment.

Under these circumstances, logic makes clear the value of releasing the government's motion in full: both to ensure the public that the government is acting properly here and to discourage impropriety in the future.

Because both experience and logic support the openness of bond-related hearings, the First Amendment right of access attaches to the Motion to Revoke Bond.

---

indictment of Dr. Bauer seems to us like piling on, and the government should more fully explain its case. Bauer has spoken about his practice and he makes a good argument. The state should be more transparent about its actions.") (attached as Ex. 7).

[42] *Feds put the hammer down*, Sandusky Register (Feb. 4, 2020) https://sanduskyregister.com/news/85302/feds-put-the-hammer-down/ (attached as Ex. 8).

## B. The government did not satisfy the requirements to seal the record despite the First Amendment right of access

The First Amendment right of access is broader than the common law's, and the requirements for circumventing it are more demanding. Once the right attaches, **the party seeking to maintain the secrecy of a filing must establish that closure satisfies a strict-scrutiny analysis**: *In re Search of Fair Finance*, 692 F.3d at 429 ("Under a qualified right, sealing is appropriate if it is 'essential to preserve higher values' and is 'narrowly tailored' to serve such ends."). And if a court identifies some interest justifying a denial of the public's right to access records or proceedings, that interest must "be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."[43]

Here, the government sealed its motion without seeking leave specific to that motion. It did not identify any compelling governmental interests before it filed the motion. It did not identify any facts specific to the motion demonstrating that sealing would advance those interests. It did not explain how sealing was narrowly tailored to achieve those interests. Its premature filing under seal prevented this Court from ruling on those questions, in turn preventing any reviewing court from evaluating whether the motion should have been filed in secret.

It may be that the government sealed its motion to protect the privacy of any of Dr. Bauer's patients whom it may have named it that motion. But individuals' privacy rights are not, standing alone, sufficient to warrant sealing the entire motion. In *Krause v. Rhodes*, 671 F.2d 212 (6th Cir. 1982), for instance, the defendants in a lawsuit over the Kent State shootings sought to prevent public disclosure of witness statements and depositions, saying their release would invade the privacy of the people named in them. But the Sixth Circuit said such materials could properly be released to the public because the district court considered each category of discovery materials

---

[43] *DeJournett*, 817 F.3d at 484 (quoting *Press-Enterprise Co.*, 464 U.S. at 510).

individually, redacted records as necessary, and made case-by-case determinations that privacy interests did not overcome the public's First Amendment right to understand the government's conduct in the case.

Two years later, the Supreme Court took the same approach in *Press-Enterprise Co.*, 464 U.S. 501, holding that juror privacy might justify an *in camera* examination and the sealing of portions of the trial transcript, but it could not justify the closure of the entirety of a *voir dire* examination or the sealing of the entire transcript.[44]

Nor does it matter that Dr. Bauer, through counsel, objects to unsealing the Motion to Revoke Bond. A defendant cannot waive the public's First Amendment right of access, which exists independent of the Sixth Amendment right to a public trial.[45] Reaching an agreement with the government to close records or hearings is equally ineffectual; as such an agreement "does not bind the court in any way."[46]

Because litigants are expected to act out of self-interest, "[t]he judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it)."[47] Courts may not "turn this function over to the parties."[48]

And even if the government could now point to some compelling basis for filing the Motion to Revoke Bond under seal, it is exceeding unlikely that complete secrecy could be considered "narrowly tailored" to advance that goal. More likely, the motion could be filed on the public docket

---

[44] *Press-Enterprise Co.*, 464 U.S. at 513 ("Those parts of the transcript reasonably entitled to privacy could have been sealed without such a sweeping order.").

[45] *Richmond Newspapers, Inc.*, 448 U.S. at 580 ("[A]lthough the Sixth Amendment guarantees the accused a right to a public trial, it does not give a right to a private trial."). *See also Press-Enterprise Co.*, 478 U.S. at 7 (recognizing First Amendment right of access even when "defendant requested a closed preliminary hearing").

[46] *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1180.

[47] *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999).

[48] *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 227 (6th Cir. 1996).

with redactions for any material that demands nondisclosure, permitting the press and the public access to at least the general basis for the motion, if not the Social Security numbers of every person mentioned in it.

Filing of a portion of its motion on the docket did not cure the problems. Redacted portions of that motion remain unavailable to the public, without an explanation from the government or a finding by the Court that the redactions are narrowly tailored. And several exhibits to the motion are still entirely under seal, again with neither an explanation nor the Court's approval.

Because the government has neither offered a compelling governmental interest to support sealing nor established that complete secrecy is a narrowly tailored means of advancing that interest, its submission of the Motion to Revoke Bond under seal violates the First Amendment.

## Conclusion

The opioid epidemic is inflicting massive damage across the county, in Ohio in particular. The public has a great interest in knowing whether an established physician in their neighborhood has truly been pushing his patients into addiction to facilitate a fraud against the United States. But the government—after ginning up nationwide coverage of its allegations—is now trying to shut the public out of its prosecution. But the public enjoys common-law and First Amendment rights to know what the courts are doing, and the government has not done the heavy lifting required to deny them that right.

Because the common-law and First Amendment rights of access attach to the Motion to Revoke Bond, because that motion was sealed without any factual findings to support closure, and because sealing the motion is not narrowly tailored to achieve a compelling governmental interest, Movants respectfully request that the Court grant their Motion to Intervene and Unseal the Government's Motion to Revoke Bond and its related attachments, and direct the parties to file future documents on the public docket.

February 5, 2020 Respectfully submitted,

/s/ Brian D. Bardwell
Subodh Chandra (0069233)
Brian D. Bardwell (0098423)
The Chandra Law Firm LLC
The Chandra Law Building
1265 West Sixth Street, Suite 400
Cleveland, OH 44113
T: 216.578.1700
F: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com
*Counsel for Movants Ohio Center for Investigative Journalism and Sandusky Register*